FILED

JUN 2 2 2026

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville



## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## NORTHERN DIVISION

| | |
|---|---|
| FANS FIRST ENTERTAINMENT, LLC, a North Carolina limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> DANA E. KING, an individual, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No. **3:26-CV-288** <br><br> Hon. **Crytzer/McCook** |

## COMPLAINT

Plaintiff Fans First Entertainment, LLC ("Plaintiff" or "Fans First Entertainment"), through its counsel Varnum LLP, submits the following complaint against Defendant Dana E. King ("Defendant").

### NATURE OF THE ACTION

1. This is an action for trademark infringement, false designation of origin, unfair competition, and related claims arising from Defendant's willful manufacture, distribution, and sale of counterfeit merchandise bearing the famous trademarks of Fans First Entertainment, LLC.

2. Fans First Entertainment is the owner, founder, and creator of the Savannah Bananas® and Banana Ball®. The Savannah Bananas are a widely recognized baseball entertainment organization that has achieved extraordinary national and international fame. Through promotion of sold-out worldwide stadium tours, viral social media content, and carefully curated branding, products, and service offerings, the Savannah Bananas have cultivated a massive, devoted fanbase and one of the most recognized and beloved brands in American sports entertainment.

3.      Not only has the team's distinctive branding, products, and service offerings made it one of the most immediately recognizable sports brands across the country, but it has also led to widespread publicity and recognition. Since its inception, the Savannah Bananas® and Banana Ball® brands have been featured on nationally televised ESPN broadcasts, along with numerous other features in or on The Wall Street Journal, CNN, Sports Illustrated, 60 Minutes, and countless other media outlets and social media platforms.

4.      As detailed in this Complaint, Defendant has deliberately misappropriated Fans First Entertainment's famous branding, products, service offerings, and goodwill by infringing and counterfeiting the Savannah Bananas' trademarks. In May 2026, Defendant set up a merchandise stand outside of a sold-out Savannah Bananas event at Neyland Stadium in Knoxville, Tennessee, and proceeded to sell counterfeit shirts, hats, and other merchandise bearing infringing marks to unsuspecting consumers. Defendant's activities were timed to deliberately coincide with the Savannah Bananas' event at Neyland Stadium to pass her counterfeit goods as legitimate Savannah Bananas products.

5.      When confronted by Fans First Entertainment's personnel and shown federal trademark registration certificates, Defendant refused to surrender the counterfeit goods and continued selling the counterfeit goods. Defendant even told Fans First Entertainment's representatives to "go ahead send me a letter[,] but I am not surrendering anything."

6.      In the time since, Defendant's defiance has only continued. To date, Defendant has ignored two separate letters requesting her cooperation in ceasing and desisting her unlawful conduct, mitigating the harm caused by such conduct, and destroying any remaining counterfeit goods.

2

7. As a direct and proximate result of Defendant's unlawful conduct, Fans First Entertainment has incurred substantial and irreparable harm, including lost sales and business opportunities, damage to its brand and goodwill, and dilution of its trademarks. To protect the substantial value and goodwill in its brand and trademarks, Fans First Entertainment seeks injunctive relief, damages, and all other available remedies under law against Defendant.

## PARTIES, JURISDICTION, AND VENUE

8. Fans First Entertainment is a North Carolina limited liability company with a principal place of business at 2934 Bee Road, Savannah, Georgia 31404.

9. Upon information and belief, Defendant is an individual citizen of the State of Tennessee, with a permanent residence and place of domicile at 1057 Alpine Drive, Sevierville, Tennessee 37876.

10. Personal jurisdiction over Defendant is proper because of her permanent residence, domicile, and ongoing business activities within the State of Tennessee. At all relevant times, Defendant has availed herself of the rights and protections of the laws of the State of Tennessee and has maintained systematic and continuous domicile and contacts within the State of Tennessee.

11. Venue is proper within this district under 28 U.S.C. § 1391 because: (A) Defendant is subject to personal jurisdiction in this judicial district; (B) Defendant has conducted business activities and operations within this judicial district; and (C) a substantial part of the events giving rise to the claim occurred in this judicial district.

12. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a)-(b), and 1367.

3

## GENERAL ALLEGATIONS

### A.     <u>Savannah Bananas – Trademarks and Registrations.</u>

13.     Since 2016, Fans First Entertainment has provided baseball entertainment, consumer merchandise, live events, and more under distinctive and widely recognized trademarks. As a direct result of these activities and their branding, the Savannah Bananas have become a worldwide cultural phenomenon, known and globally recognized for their unique brand of baseball entertainment called "Banana Ball®".

14.     Fans First Entertainment is the creator and owner of numerous Savannah Bananas trademarks (the "Savannah Bananas Marks"), which are protected via active U.S. Trademark Registrations. These include, among others, U.S. Trademark Reg. Nos. 5,067,477 (the "'477 Mark"), 6,928,563 (the "'563 Mark"), 6,936,675 (the "'675 Mark"), 6,930,984 (the "'984 Mark"), and 8,044,318 (the "'318 Mark") (collectively, the "Registrations"). *See* **Exhibit A** (Registration Certificates).

| Trademark | Relevant Goods / Services |
|---|---|
| <br>(U.S. Trademark Reg. No. 5,067,477) | **Int'l Class No. 25**: clothing, namely, shirts, shorts, tee shirts, polo shirts, golf shirts, tank tops, jogging suits, socks, underwear, jackets, sweaters, vests, pants, ponchos, visors, hats, caps, cloth bibs, ties, pajamas, baby pants, baby booties and short sets, sweatshirts, mittens, gloves, knitted hats, scarves, hosiery, wrist bands, head bands, robes, aprons, shoes, wind resistant jackets, jumpsuits, sweatpants, overalls, bandanas, beachwear, bathing suits, belts, bermuda shorts, blouses, coats, dresses, gym suits, head wear, leather jackets, jerseys, pullovers, rompers, rainwear, parkas, night shirts, v-neck sweaters and knit shirts.<br><br>First Use in Commerce: February 1, 2016 |

4

| | |
|---|---|
| **SAVANNAH BANANAS**<br><br>(U.S. Trademark Reg. No. 6,928,563) | **Int'l Class No. 25**: Clothing, namely, shirts, shorts, tee shirts, polo shirts, golf shirts, tank tops, jogging suits, socks, underwear, jackets, sweaters, vests, pants, ponchos, visors, cloth bibs, ties, pajamas, baby pants, baby booties and short sets, sweatshirts, mittens, gloves, knitted hats, scarves, hosiery, wrist bands, head bands, robes, aprons, shoes, wind resistant jackets, jumpsuits, sweatpants, overalls, bandanas, beachwear, bathing suits, belts, bermuda shorts, blouses, coats, dresses, gym suits, head wear, leather jackets, jerseys, pullovers, rompers, rainwear, parkas, night shirts, v-neck sweaters, and knit shirts; bodysuits; headwear, namely, hats and caps; visors, bandanas, dorags, and baseball hats.<br><br>First Use in Commerce: February 1, 2016 |
| <br><br>(U.S. Trademark Reg. No. 6,930,984) | **Int'l Class No. 25**: Clothing, namely, t-shirts, shirts, sweatshirts, hoodies, bodysuits, and underwear; Headwear, namely, hats and caps.<br><br>First Use in Commerce: February 25, 2016 |
| **BANANAS**<br>(U.S. Trademark Reg. No. 6,936,675) | **Int'l Class No. 25**: Clothing, namely, t-shirts, shirts, sweatshirts, hoodies, bodysuits, and underwear; Headwear, namely, hats and caps.<br><br>First Use in Commerce: February 25, 2016 |
| <br><br>(U.S. Trademark Reg. No. 8,044,318) | **Int'l Class No. 25**: Clothing, namely, tops as clothing, bottoms as clothing, t-shirts, shirts, sweatshirts, hoodies, shorts, polo shirts, golf shirts, tank tops, jogging suits, socks, underwear, jackets, sweaters, vests, pants, ponchos, visors being headwear, cloth bibs, ties as clothing, pajamas, baby pants, baby booties and short sets, mittens, gloves, knitted hats, scarves, hosiery, wrist bands as clothing, head bands, robes, aprons, shoes, wind resistant jackets, jumpsuits, sweatpants, overalls, bandanas, beachwear, bathing suits, belts, bermuda shorts, blouses, coats, dresses, gym suits, head wear, leather jackets, jerseys, pullovers, rompers, rainwear, parkas, night shirts, v-neck sweaters, bodysuits, and knit shirts; Headwear, namely, caps and hats, bandanas, dorags, and baseball hats<br><br>First Use In Commerce: February 25, 2016 |

5

15. Fans First Entertainment has continuously used the Savannah Bananas Marks and Registrations in interstate commerce since at least February 2016.

16. All of the Registrations are valid, subsisting, and remain in full force and effect. Each has been duly registered with the United States Patent and Trademark Office and remain actively maintained by Fans First Entertainment through the timely filing of all required renewals and declarations.

17. Some of the Registrations, including the '477 Registration, have attained incontestable status under 15 U.S.C. § 1065 and therefore constitute conclusive evidence of the validity of those marks, and Fans First Entertainment's ownership and exclusive right to use the corresponding incontestable Registrations.

18. As a result of widespread, continuous, and longstanding use of the Savannah Bananas Marks to identify its clothing, apparel, and other goods identified under the Registrations (collectively, the "Goods"), Fans First Entertainment owns strong, valid, and subsisting federal statutory and common law rights in and to the Savannah Bananas Marks.

19. Fans First Entertainment has expended substantial time, money, and resources marketing, advertising, and promoting the Goods sold under the Savannah Bananas Marks. As a direct and proximate result of Fans First Entertainment's nationwide promotion, sales, and advertising activities, the Savannah Bananas Marks are widely recognized by consumers as identifying Fans First Entertainment and its high-quality products and services.

20. In making substantial investments in these promotional, advertising, and sales activities, the Savannah Bananas Marks have come to signify the high-quality products and services offered exclusively by Fans First Entertainment. Through these activities, the Savannah

6

Bananas Marks have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Fans First Entertainment.

21.     Fans First Entertainment derives substantial goodwill and revenue from its numerous promotional, advertising, and sales activities.

22.     As a result of the foregoing, the Savannah Bananas Marks are famous marks within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**B.      Defendant's Counterfeiting and Unlawful Conduct.**

23.     On or about May 23, 2026, Fans First Entertainment held a Savannah Bananas v. Texas Tailgaters Banana Ball® game at Neyland Stadium in Knoxville, Tennessee—a sold-out event attended by over 100,000 fans.

24.     Defendant, operating under the name "Tennessee Outfitters," was observed in the vicinity of the event willfully displaying, marketing, and selling counterfeit and infringing merchandise bearing the Savannah Bananas Marks. Defendant timed her sales activities to coincide directly with the game so as to capitalize on, trade off of, and profit from the Savannah Bananas goodwill and consumer demand generated by the event.

25.     The counterfeit merchandise included, without limitation, unauthorized reproductions of: (A) yellow jerseys featuring the word "Bananas" in a virtually identical manner to the '318 Registration or '675 Registration; (B) t-shirts featuring an anthropomorphic banana mascot in a batting stance closely resembling the figure featured in the '477 Registration and/or '984 Registration, together with the word "Bananas" in a virtually identical manner to the '318 Registration; and (C) hats that bear an anthropomorphic banana mascot in a batting stance closely resembling the figure featured in the '477 Registration and/or '984 Registration, together with the

7

word "Bananas" in a virtually identical manner to the '318 Registration (altogether, the "Counterfeit Merchandise"). *See* **Exhibit B** (Images of Counterfeit Merchandise).

26. As set forth above, the Counterfeit Merchandise includes unauthorized reproductions, counterfeits, and/or confusingly similar marks to those contained in Fans First Entertainment's Registrations (hereinafter, the "Infringing Marks").

27. The Counterfeit Merchandise also notably included unauthorized reproductions of marks owned by the University of Tennessee, further demonstrating Defendant's pattern of willful and deliberate trademark infringement.

28. Defendant priced the Counterfeit Merchandise at $20 for youth shirts, $25 for adult shirts, and $20 for hats. At the time of the encounter, Defendant had at least 35 shirts displayed on a table and another 25 shirts stored in a wagon, with many additional shirts already sold.

29. Upon information and belief, Defendant possessed in excess of 100 counterfeit shirts in total, plus approximately 25 counterfeit hats.

30. Defendant's Counterfeit Merchandise was not authorized or licensed by Fans First Entertainment. At no point has Defendant ever held, owned, or obtained a license, consent, or other authorization to use the Savannah Bananas Marks.

31. While selling Counterfeit Merchandise, Defendant was personally confronted by Fans First Entertainment personnel and local law enforcement regarding her unlawful activities.

32. During this confrontation, Defendant was shown the Registrations, clearly establishing Fans First Entertainment's ownership of the Savannah Bananas Marks.

33. Defendant was expressly warned that her conduct constituted unlawful trademark infringement and counterfeiting under federal law.

8

34. Despite being confronted with clear evidence of Fans First Entertainment's federal trademark rights and being expressly warned of the illegality of her conduct, Defendant refused to cease her unlawful activities.

35. Defendant refused to surrender any of the Counterfeit Merchandise.

36. Defendant openly and defiantly continued selling the Counterfeit Merchandise, effectively daring Fans First Entertainment to take legal action, telling its representatives to: "go ahead send me a letter[,] but I am not surrendering anything."

37. Additionally, Defendant made affirmative misrepresentations to fans and patrons at the event, falsely claiming that she was "licensed" or otherwise authorized to sell Savannah Bananas merchandise, when in fact she held no such license or authorization of any kind.

38. Defendant also made materially false statements to Fans First Entertainment's representatives regarding the quantity of merchandise in her inventory, claiming she had only 30 shirts when she had at least 60 or more visible shirts and had already sold a substantial number.

39. At the event, Defendant informed Fans First Entertainment's representatives that she regularly sells unauthorized merchandise at concerts, sporting events, festivals, and other venues, suggesting an ongoing pattern of trademark infringement extending beyond this single incident.

40. Consistent with Defendant's requests, on May 23, 2026, counsel for Fans First Entertainment sent Defendant a detailed cease and desist letter via email, text message, and UPS, demanding that Defendant: (A) immediately cease all use of the Savannah Bananas Marks; (B) destroy all infringing and counterfeit merchandise; (C) pay damages; (D) provide a full accounting of all revenues and profits derived from her use of the Marks; and (E) identify all

9

manufacturers and/or sources of the counterfeit and infringing merchandise. *See* **Exhibit C** (Letter to Defendant dated May 23, 2026).

41.     Despite confirmation that the letter was delivered via each of these channels, Defendant failed to respond to the May 23, 2026 letter.

42.     On June 1, 2026, counsel for Fans First Entertainment sent a follow-up letter to Defendant via email, text, and UPS. *See* **Exhibit D** (Letter to Defendant dated June 1, 2026). Once again, Defendant failed to respond.

43.     As of the date of this Complaint, Defendant has failed to respond to either the May 23, 2026 or June 1, 2026 letters. Defendant's complete failure to respond, combined with her defiant on-site refusal to cease her infringing activities, demonstrates that Defendant intends to continue her unlawful conduct unless restrained by this Court.

44.     Unless and until enjoined by the Court, Defendant's actions will continue to cause substantial damages and irreparable harm to Fans First Entertainment's valuable reputation and goodwill, for which there is no adequate remedy at law.

**COUNT I – TRADEMARK INFRINGEMENT<br>IN VIOLATION OF 15 U.S.C. § 1114**

45.     Fans First Entertainment realleges and incorporates each of the foregoing allegations by reference, as if fully set forth herein.

46.     Fans First Entertainment is the rightful owner of the Savannah Bananas Marks and Registrations.

47.     Fans First Entertainment has used the Savannah Bananas Marks and Registrations long prior to Defendant's use of the Infringing Marks and sale of the Counterfeit Merchandise.

48.     Defendant's unauthorized use in commerce of the Infringing Marks and Counterfeit Merchandise as alleged herein is likely to deceive consumers as to the origin, source, sponsorship,

10

or affiliation of Defendant's Counterfeit Merchandise and is likely to cause consumers to believe, contrary to fact, that Defendant's Counterfeit Merchandise are sold, authorized, endorsed, or sponsored by Fans First Entertainment, or that Defendant is in some way affiliated with or sponsored by Fans First Entertainment. Defendant's conduct, therefore, constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

49. Defendant has committed the foregoing acts of infringement and counterfeiting willfully, intentionally, and with full knowledge of Fans First Entertainment's prior rights in and to the Savannah Bananas Marks. Among other actions, Defendant's willfulness is demonstrated by her defiant refusal to stop selling the Counterfeit Merchandise, her false claims of being "licensed," and her complete non-response to two demand letters.

50. Upon information and belief, Defendant's actions were done with the willful intent to cause confusion in the marketplace and trade on Fans First Entertainment's branding and goodwill.

51. Defendant's unauthorized use of the Savannah Bananas Marks constitutes use of counterfeit marks within the meaning of 15 U.S.C. § 1116(d)(1)(B), in that Defendant used reproductions of registered marks that are substantially indistinguishable from the genuine Savannah Bananas Marks.

52. Defendant's conduct was done to pass off the Counterfeit Merchandise as legitimate Savannah Bananas Marks and branding, thereby diluting the value of the Savannah Bananas Marks and Goods in the marketplace.

53. Defendant's actions continue to damage Fans First Entertainment and will confuse, mislead, and/or deceive the public unless enjoined by this Court.

11

54. As a direct and proximate result of Defendant's conduct, Fans First Entertainment has suffered and will continue to suffer irreparable harm and damage to its business, goodwill, and reputation for which there is no adequate remedy at law.

55. Accordingly, Fans First Entertainment is entitled to, among other relief, declaratory judgment that Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114), injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest. Furthermore, under 15 U.S.C. § 1117, Fans First Entertainment is entitled to elect statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed by Defendant, given the willful nature of Defendant's counterfeiting.

## COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a)

56. Fans First Entertainment realleges and incorporates each of the foregoing allegations by reference, as if fully set forth herein.

57. Fans First Entertainment is the rightful owner of the Savannah Bananas Marks and Registrations.

58. Fans First Entertainment has used the Savannah Bananas Marks and Registrations long prior to Defendant's use of the Infringing Marks and sale of the Counterfeit Merchandise.

59. Defendant's unauthorized use in commerce of the Infringing Marks and Counterfeit Merchandise, as alleged herein, is likely to deceive and/or mislead consumers as to the origin, source, sponsorship, or affiliation of Defendant's Counterfeit Merchandise and is likely to cause consumers to believe, contrary to fact, that Defendant's Counterfeit Merchandise are sold,

12

authorized, endorsed, or sponsored by Fans First Entertainment, or that Defendant is in some way affiliated with or sponsored by Fans First Entertainment.

60. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Defendant's conduct and unauthorized use in commerce of the Infringing Mark, as alleged herein, constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62. Defendant's conduct, as alleged herein, is willful and is intended to and is likely to cause confusion, mistake, and/or deception as to the affiliation, connection, or association of Defendant with Fans First Entertainment.

63. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Fans First Entertainment and its goodwill and reputation, and such conduct will continue to both damage Fans First Entertainment and confuse the public unless enjoined by this Court.

64. As a direct and proximate result of Defendant's conduct, Fans First Entertainment has suffered and will continue to suffer irreparable harm and damage to its business, goodwill, and reputation for which there is no adequate remedy at law.

65. Accordingly, Fans First Entertainment is entitled to, among other relief, declaratory judgment that Defendant has violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116–1117, together with prejudgment and post-judgment interest.

13

## COUNT III – VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE § 47-18-101 *et seq.*

66. Fans First Entertainment realleges and incorporates each of the foregoing allegations by reference, as if fully set forth herein.

67. Fans First Entertainment and Defendant are both "persons" within the meaning of Tenn. Code. § 47-18-103(18).

68. Defendant's conduct, as alleged herein, constitutes unfair or deceptive acts as defined by Tenn. Code § 47-18-104. In relevant part, Defendant has: (A) falsely passed off the Counterfeit Merchandise as the Goods of Fans First Entertainment; (B) caused actual or a likelihood of confusion as to the affiliation, connection, or association of the Infringing Marks and Counterfeit Merchandise with Fans First Entertainment and the Savannah Bananas Marks; (C) used deceptive representations or designations of geographic origin in connection with the Counterfeit Merchandise; and/or (D) represented that the Counterfeit Merchandise has sponsorship, approval, status, affiliation, or connection with Fans First Entertainment that Defendant in fact does not have.

69. Defendant's conduct, as alleged herein, violates the Tennessee Consumer Protection Act, as Defendant has engaged in unfair or deceptive acts by affecting trade, commerce, or consumer transactions within the meaning of Tenn Code § 47-18-104.

70. Defendant's conduct, as alleged herein, was willful and/or knowing, including insofar as Defendant was alerted and aware that she was utilizing the Infringing Marks and selling Counterfeit Merchandise without Fans First Entertainment's sponsorship, approval, or consent.

71. As a direct and proximate result of Defendant's unfair and deceptive acts, Fans First Entertainment has suffered an ascertainable loss of money, property, goodwill, or other items of value.

14

72.     Fans First Entertainment is therefore entitled to actual and treble damages under the Tennessee Consumer Protection Act, together with injunctive relief and all other legal or equitable relief provided thereunder.

### COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

73.     Fans First Entertainment realleges and incorporates each of the foregoing allegations by reference, as if fully set forth herein.

74.     Defendant's unauthorized use of the Infringing Marks in commerce in connection with the Counterfeit Merchandise is likely to cause actual confusion and/or mistake with Fans First Entertainment's valid and pre-existing Savannah Bananas Marks and Goods.

75.     Defendant's conduct, as alleged herein, is causing immediate and irreparable harm and injury to Fans First Entertainment and its goodwill and reputation.

76.     Defendant's conduct, as alleged herein, will continue to damage Fans First Entertainment and confuse the public unless enjoined by this Court.

77.     Absent Court intervention, Fans First Entertainment has no adequate remedy at law.

### REQUESTED RELIEF

WHEREFORE, Plaintiff Fans First Entertainment, LLC respectfully requests a judgment in its favor against Defendant as follows:

1.     Declaring that Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), the Tennessee Consumer Protection Act (Tenn. Code § 47-18-101 *et seq.*), and Tennessee common law.

2.     Granting an injunction temporarily, preliminarily, and permanently enjoining Defendant and any of her representatives, employees, franchisees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and

15

participation with any of the foregoing persons or entities who receive actual notice of the Court's order by personal service or otherwise from:

    a. Selling, advertising, marketing, promoting, distributing, or using the Infringing Marks and Counterfeit Merchandise in any way;

    b. Engaging in any activity that infringes Plaintiff's rights in and to the Savannah Bananas Marks;

    c. Engaging in any activity constituting unfair competition with Plaintiff;

    d. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's Infringing Marks or Counterfeit Merchandise are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff;

    e. Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress—up to and including the Infringing Marks—that falsely associate such business, goods, and services with Plaintiff or tend to do so;

    f. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (e).

3. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any Counterfeit Merchandise manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or

16

franchised by, or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's Goods—up to and including destruction of the Counterfeit Merchandise and any other merchandise, labels, signs, prints, packages, wrappers, receptacles, advertising materials, digital files, and all other materials in Defendant's possession, custody, or control that bear any of the Savannah Bananas Marks or any reproduction, counterfeit, copy, or colorable imitation thereof that resemble the Savannah Bananas Marks.

4. Directing Defendant to immediately cease all use of the Infringing Marks, or any confusingly similar variations thereof, in connection with any and all advertising, marketing, promotion, sales activities, and online content, and to direct all representatives, employees, franchisees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities acting on Defendant's behalf to do the same.

5. Directing, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1116(a), that Defendant files a written report under oath with the Court, setting forth in detail the manner and form in which Defendant has complied with the injunction, and serves the same upon Plaintiff's counsel within thirty (30) days of any injunction entered in this action (or such other period as the Court may allow).

6. Awarding Plaintiff its actual damages and/or an amount up to three times the amount of its actual damages, pursuant to 15 U.S.C. § 1117(a) and/or Tenn. Code § 47-18-109(a)(3), along with all other relief the Court considers necessary and proper.

7. Awarding Plaintiff statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed by Defendant, given the willful nature of Defendant's counterfeiting.

17

8. Directing that Defendant account for and pay to Plaintiff all profits derived from her wrongful acts pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), with such profits enhanced as appropriate to fully compensate Plaintiff for the damages caused thereby.

9. Awarding Plaintiff punitive and exemplary damages as deemed appropriate by the Court to deter any future unlawful conduct by Defendant.

10. Declaring this case exceptional pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), and awarding Plaintiff its costs and reasonable attorneys' fees accordingly.

11. Awarding Plaintiff interest on the foregoing sums, including both prejudgment and post-judgment interest.

12. Awarding such other and further relief as this Court deems appropriate.

Respectfully Submitted,

Date: June 19, 2026

Timothy K. Kroninger (*pro hac vice pending*)
Jeffrey T. Hewlett (*pro hac vice pending*)
Timothy D. Kroninger (*pro hac vice pending*)
**VARNUM LLP**
480 Pierce Street, Suite 300
Birmingham, MI 48009
(313) 481-7320
tkkroninger@varnumlaw.com
jthewlett@varnumlaw.com
tdkroninger@varnumlaw.com

*Attorneys for Plaintiff*

18